JAMES G. FARGO, as President of the Merchants' Dispatch Transportation Company, Respondent, *v.* WILLIAM MILBURN et al., Appellants.

Plaintiff, a common carrier, received at Chicago certain merchandise to be transported to Antwerp ; it issued to the shippers through bills of lading, which stated that the goods were to be transported to New York and there delivered on board defendant's steamship F. for transportation to the place of destination; the inland freight to New York and the ocean freight from thence to Antwerp were separately stated. The goods were delivered on board the F., plaintiff taking the captain's receipt therefor. Defendants had chartered the steamer to the firm of D. & R., but they were notified that plaintiff would not deal with that firm, and the captain promised, in accordance with custom, to give his draft for the inland freight before sailing. He did not do this and issued no bills of freight for this part of the cargo. The goods were transported to Antwerp and defendants collected the entire freight. Before they made any remittances on account of the freight they were notified of plaintiff's claim and forbidden to pay any of the inland freight to D. & R.; they, however, accounted to said firm therefor. In an action to recover the inland freight, *held*, it was to be presumed that the captain saw before sailing the bills of lading issued by plaintiff, and as defendants in no manner repudiated plaintiff's authority to act for them or declined the shipment, and as they collected the freight, not upon any order or authority of D. & R., but under said bills of lading, they thereby ratified and adopted the same and were liable.

(Submitted June 19, 1885 ; decided October 6, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made March 30, 1883, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover moneys alleged to have been received by defendants for and on account of the plaintiff's company.

The evidence was to the effect that James Warrack, plaintiff's agent at Chicago, received from parties in that city certain merchandise to be transported to Antwerp. Warrack issued to the shippers bills of lading, which stated in substance that the goods were to be transported by plaintiff to New York and

there delivered on board the steamship *Fernwood,* which belonged to defendants, to be conveyed to Antwerp. The freight charges from Chicago to New York and from thence to Antwerp were apportioned and separately stated upon the bills. The *Fernwood* had been chartered for the voyage by defendants to Dill & Radmann of New York. The goods were delivered on board that vessel, were transported to Antwerp, delivered to the consignees, and defendants' agent collected and received the through freight. The further facts appear in the opinion.

*William Allen Butler* for appellants. The master could not bind his owners beyond the ordinary terms of a bill of lading. He was not their general agent, but only a special agent for navigating the vessel. The owners are not bound for any acts done by the master outside of the scope of his particular employment. (*Gen. Int. Ins. Co.* v. *Ruggles,* 12 Wheat. 408; *Pope* v. *Nickerson,* 3 Story, 465 ; 2 Pars. on Ship. and Adm. 7.) Under the charter party the entire cargo was to be furnished by the charterers, and all the cargo sent on board was, as between the owners and the charterers, cargo furnished by them, no matter from whom received. (*Newberry* v. *Colvin,* 7 Bing. 190 ; *Schuster* v. *McKeller,* 7 El. & Bl. 704.) The whole arrangement by which the plaintiff, in conjunction with the charterers, undertook to make contracts for through freights from Chicago to Antwerp, and to issue bills of lading, binding the *Fernwood,* was without the knowledge or privity of the defendants, and was, therefore, so far as the plaintiff was concerned, wholly at his own risk, and by the terms of the charter party all goods shipped on the *Fernwood* were subject to the owners' lien, and to the terms of the charter party. (*McFarland* v. *Wheeler,* 26 Wend. 467.)

*Hamilton Cole* for respondent. It was upon the express understanding that the captain of the *Fernwood* was to give a captain's draft for the inland freight that the goods were delivered to the steamer, and in making such promise he acted

as agent of the owners and within the scope of his authority. (Ford's Law of Ship. 200 ; 2 Pars. on Ship. and Adm. 7 ; Abbott's Law of Merch. Ship. [12th ed.] 84, 315.) No point can now be raised that there was any question for the jury. (*Todd* v. *Todd*, 3 Hun, 298 ; *Barnes* v. *Perine*, 12 N. Y. 18 ; *Winchell* v. *Hicks*, 18 id. 558 ; *O'Neill* v. *James*, 43 id. 85.)

Finch, J. This case was disposed of by the court ; each party asking that a verdict be ordered in his own favor, and neither requesting that any issue of fact be submitted to the jury. The sole question, therefore, is whether upon some reasonable view of the facts the judgment for the plaintiff can be sustained ; for which purpose, where the evidence is contradictory, we must assume as having been found, where that could fairly have happened, the version which leads to an affirmance.

That the inland freight was earned and belonged to the plaintiff ; that its amount was fixed and known ; that the owners of the vessel collected it upon through bills of lading drawn by the plaintiff, assuming to act as agent for the ship, and upon which the property was delivered to the consignees ; that the captain promised in accordance with custom to give his draft for such inland freight before the sailing of the vessel, and was notified that the plaintiff would not deal with Dill & Radman, the charterers ; that the property was delivered taking the mate's receipt, which was afterward exchanged for the captain's receipt ; all these are facts, either uncontradicted or supported by the preponderance of proof, and which justify the judgment rendered. The effort of the owners is to shift their liability to the charterers, and ignore any contract with or duty to other persons. In doing so they rely largely upon the fact that the captain issued no bills of lading for this specific part of the cargo. Assuredly he ratified those which were issued. They were drawn at Chicago, and covered the entire transportation from that city to Antwerp, specifying the *Fernwood* as the ocean carrier, signed by Warrack as agent, " severally and not jointly," and so claiming to represent and

bind the plaintiff as to the inland transportation, and the ship as to the remainder. These bills of lading we must assume from the proof were shown to the captain before he sailed, with their statement of the separate amounts of the inland and ocean freight; who in no manner repudiated the authority or declined the shipment under it, but commented only upon the amounts; and who, on arriving at Antwerp, delivered the goods to the parties holding the bills signed by Warrack and not upon any order or authority of Dill & Radman; who collected the freight according to their terms, and so recognized the shipment as made under the Chicago bills of lading. Warrack's agency was thus ratified instead of repudiated. It is true that the captain claimed in his evidence to have shipped his whole cargo for Dill & Radman, issuing the bills of lading when and as presented by Dill & Radman, and yet he is forced to admit that when at sea he found he had cargo for which he had issued no bills of lading, which, therefore, was not shipped by the charterers, and which was represented first by the mate's receipt given "subject to charges," and then by his own given in exchange; and so it is easy to put confidence in the plaintiff's proof which harmonizes and explains the known facts in the case. It may very well be that Dill & Radman assented to this shipment as part of the cargo, but nothing in the case indicates that the property in question was delivered to them, or upon their responsibility for the inland freight, but every thing points to a shipment by the plaintiff and upon the responsibility of the vessel as it respected such freight. We can see no just ground upon which the money of the plaintiffs, collected upon the bills of lading which they issued, received for them and known to be due to them, could be diverted from their ownership and paid over to Dill & Radman, or involved in the ship's account with that firm. On the 21st of February, 1878, the agents of the owners were notified in writing, formally and precisely, of the plaintiff's claim, and forbidden to pay any of the inland freight to Dill & Radman; and it appears that no remittance for anybody in New York, on account of such freight, was made until March

of that year, when a balance of about $1,000, lessened by a claim against Dill & Radman for four days' demurrage at £50 a day, which they disputed and have never allowed, was sent to the owners' agents in New York and appears to be still held by them. If, by the terms of the charter-party, demurrage was a lien upon the cargo, it was only so upon the goods shipped under it by Dill & Radman, and we are satisfied that the shipment in question was not of that character, but under the plaintiff's bill of lading, ratified and adopted on behalf of the vessel.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.