(54 App. Div. 99.)

BANK OF STATE OF NEW YORK et al. v. SOUTHERN NAT. BANK.

(Supreme Court, Appellate Division, Second Department.    October 12, 1900.)

1. STATUTES—SPECIAL VERDICT—EXCEPTIONS—REVIEW.

Code Civ. Proc. § 1187, declares that where a motion is made to nonsuit the plaintiff, or for the direction of a verdict, the court, pending the decision of such motion, may submit any question of fact to the jury, and after the jury's special verdict the court may pass on the motion for nonsuit, or direct such general verdict as may be proper. *Held*, that where defendant moved to dismiss the complaint, and, the motion being denied, it did not ask that any questions be submitted to the jury, and the court, on its own motion, submitted questions of fact to the jury, exceptions and objections of defendant to the court's instructions to the jury would not be reviewed on appeal, since, by its request for the direction of a verdict, and failure to ask that questions be submitted to the jury, it waived its right to interfere in the question.

2. SAME—EVIDENCE—SUFFICIENCY.

Under Code Civ. Proc. § 1187, declaring that when a motion is made to nonsuit the plaintiff, or for the direction of a verdict, the court, pending the decision of such motion, may submit any question of fact to the jury, and after the jury's special verdict may pass on the nonsuit, or direct such verdict as may be proper, where plaintiff moved for the direction of a verdict, and defendant asked for the dismissal of the complaint, and the court submitted questions to the jury, a verdict directed by the court in favor of plaintiff would be deemed, on appeal, to be supported by all controverted and inferable facts, since the verdict had the force and effect of the findings of a jury.

Appeal from trial term, New York county.

Action by the Bank of the State of New York and others against the Southern National Bank. From a judgment in favor of plaintiffs, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

B. F. Einstein, for appellant.
George A. Strong, for respondents.

WOODWARD, J. The trial of this action occupied nearly one week, and a full opportunity appears to have been given for the presentation of all material facts. At the close of plaintiffs' case the defendant moved for a nonsuit, which motion was denied. When the evidence was all in, the defendant, without renewing its previous motion, moved to dismiss the complaint, and the plaintiffs asked that a verdict be directed in their favor. Neither party asked to have any question of fact submitted to the jury, and the case was thus brought within the rule that a request by each party for a direction of a verdict in his favor clothes the court with the functions of the jury. It is well settled that in such case, where the party whose request is denied does not thereupon request to go to the jury upon the facts, a verdict directed for the other party stands as would the finding of a jury for the same party in the absence of any direction, and the review in this court is governed by the same rules as apply in cases of ordinary verdicts rendered without any direction. All the controverted facts and all inferable facts in support of the judgment will be

deemed established in favor of the party for whom the verdict was directed. Thompson v. Simpson, 128 N. Y. 270, 283, 28 N. E. 627.

The court, upon its own motion, submitted certain questions of fact to the jury, stating that:

"I ask these questions, and they are submitted to the jury, without the consent of the parties, and in the interest of the state, because I believe, if the jury answer them, I will know what to do about a verdict; and those I did not ask, because I thought it was not necessary for me to know anything about what they thought about these matters in order to be able to do what is right about the matter if they answered these."

When the jury had answered the questions submitted, the court directed a verdict for the plaintiffs, as authorized by section 1187 of the Code of Civil Procedure. Although defendant's counsel interposed many objections and exceptions to the charge of the court, and interposed requests to submit certain questions in connection therewith, we are of opinion that the matters in controversy having been submitted to the court by the motions made by both parties for the direction of a verdict, and on the denial of defendant's motion no request having been made for the submission of the facts to the jury, its right to interfere in the questions submitted to the jury was waived. The submission of questions to the jury was in the discretion of the court; the jury acting in an advisory capacity, and without any authority to control the verdict. In this view, if the evidence warrants the conclusions reached, there is an end of the appellant's case. Fargo v. Milburn, 100 N. Y. 94, 96, 2 N. E. 278.

The firm of Robinson & Booth was a depositor in the defendant bank, and each plaintiff, other than the sheriff, was a creditor of the firm. In February, 1896, each of these creditors brought an action against the firm, and procured a warrant of attachment, which was levied upon the balance then existing in their favor in their account with the defendant bank. The amount of this balance was the subject of controversy upon the trial. The defendant conceded the amount to be $66.11, while the plaintiffs claimed that it was $3,808.86 more, by reason of a certain discount which the defendant bank had given to Robinson & Booth on January 21, 1896. It was fully established by the evidence that on the date mentioned Robinson & Booth presented a draft to defendant for $3,878.36, drawn by themselves to their own order upon W. D. Wheelwright & Co.; that the draft was at first refused, but afterwards accepted; and that it resulted in a credit of $3,808.56 upon the pass book which the firm kept with the bank. On the 26th of February, 1896, the firm of Robinson & Booth made an assignment for the benefit of creditors, and this pass book came into the possession of the assignee. It was delivered to the bank for the purpose of having the account written up, and when it was returned to the assignee the item of credit mentioned above was canceled with a pen stroke. The defendant claimed upon the trial, and offered evidence in support of the contention, that the credit upon the draft drawn upon Wheelwright & Co. was legally canceled. The president of the bank testified that when Wheelwright & Co. failed, within a few days of the discounting of the draft, one of the members of the firm of Robinson & Booth was called in and notified that the credit had been

canceled, and that he said it was all right. This testimony was flatly contradicted by Mr. Booth, the member of the firm who appears to have transacted the business, and upon this point the jury has found that Mr. Booth did not agree to his cancellation. It was also urged, and supported by the evidence of the president of the defendant bank, that when the draft was originally discounted Mr. Booth told Mr. Rosenwald, the president of the bank, that Wheelwright & Co. were good; that the paper was first-class, and would be paid at maturity; and that, if Wheelwright & Co. were not good, the firm of Robinson & Booth were good. The court held in its instructions to the jury that there was no evidence that Wheelwright & Co. were not good, or that the paper was not first-class, and that there was, therefore, nothing for the jury to pass upon in reference to the representations as to that company. The jury, in response to questions submitted by the court, found that on January 21, 1896, Booth told Rosenwald that Robinson & Booth were good; that the statement was not false; that it was a mere expression of opinion; and that it was not made recklessly. They also found that Robinson & Booth were good January 21, 1896. There was no affirmative evidence that the firm was good at that time, but we find none which tended to show that it was not good, unless the fact of its failure within a few weeks may lead in that direction. The only finding of the jury inconsistent with the judgment is that Rosenwald, in making the discount, acted upon the faith of the statement by Booth that Robinson & Booth were good, but in view of the fact that Rosenwald himself testified, in reference to Robinson & Booth, that: "I didn't like the way they were doing business. I wasn't afraid of them, but I didn't like the way they were doing business. I was not afraid of their solvency,"—and the further fact that the finding is inconsistent with the other findings, the court was clearly justified in disregarding this conclusion of the jury, and in directing a verdict for the plaintiffs. All of the findings of the jury, with the exceptions noticed, were supported by the evidence; and, as to the exceptions, the evidence is sufficient to sustain the court in directing the verdict when the defendant waived its right to go to the jury upon the facts. The effort of the defendant to establish fraud in the procuring of the discount has failed, and the plaintiffs have a right to recover the amount in the hands of the defendant at the time of the levying of the attachment.

The amount of the judgment having been determined by the jury, the defendant can have no possible interest in the question as to whether it should be paid to the sheriff or to the other plaintiffs; and the technical questions raised by the defendant need not be determined, where the plaintiffs all seem to acquiesce in the form in which the judgment is entered.

The judgment and order appealed from should be affirmed, with costs. All concur.